UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| John Doe, by his Guardian, Lisa Geer, Bob Doe, by his Guardian, Pamela Brownlee, Sam Doe, by his Guardian, Lakesha Brownlee, and Bill Doe, by his Guardian, Kim Brownlee,<br><br>        Plaintiffs,<br><br>vs.<br><br>The South Carolina Board of Education, Anderson County District 5, and T.L. Hanna High School, Superintendent Tom Wilson, Principal Sheila Hilton, Academic Director Jeff Taylor, Resource Officer Jamie Hill, Vice Principal Chris Bowen, 9th Grade Principal Mary Neil Anthony, and Resource Officer Willis Taylor,<br><br>        Defendants. | Civil Action No.: 8:14-cv-02061-BHH<br><br>**Opinion and Order** |

This matter is before the Court on Defendants' motions for summary judgment (ECF No. 44 & 45). For the reasons set forth herein, the Court grants summary judgment on Plaintiffs' federal claims, declines to exercise supplemental jurisdiction over the state claims, and dismisses the state claims without prejudice.

**BACKGROUND**

This case arises out of the expulsion of four students, Plaintiffs John Doe, Bob Doe, Sam Doe, and Bill Doe, from T.L. Hanna High School ("T.L. Hanna") in Anderson,

1

South Carolina. The students were expelled after school officials concluded that they were engaged in gang related activity in violation of the School District's Code of Conduct. The alleged gang is known as "Outlaw" and included the four Plaintiff students as well as others who did not attend T.L. Hanna. Outlaw is allegedly affiliated with "Hit Squad," which is described as a larger gang in the Anderson area. (*See generally,* Hilton Aff. Exs. A-D, ECF No. 44-4.)

School officials learned about the alleged gang activity after an altercation between Plaintiff Bill Doe and another student, in which the other student provoked Bill Doe when he said, "Fuck Outlaw." (Hilton Aff. ¶ 6, ECF No. 44-4.) Bill Doe was later reported to have the word "Outlaw" written on his football shorts. (*Id.* ¶ 7.) On October 22, 2013, Bill Doe was confronted by school officials about the altercation and the word written on his shorts. (*Id.* ¶ 8.) He allegedly admitted that he was a member of the Outlaw gang, revealed the identities of three other alleged gang members who were also T.L. Hanna students, and indicated he had been assigned missions that he was required to complete for the gang, including writing "Outlaw" on his shorts and fighting with someone over the weekend. (*Id.* ¶¶ 8-10.) Additionally, Bill Doe indicated that he was afraid he would have his head bashed in if he failed to complete his mission or identified other gang members to school officials. (Hilton Aff. Ex. B, ECF No. 40-4 at 23.) In addition to Principal Hilton, 9th Grade Principal Mary Neil Anthony, and Resource Officer Jamie Hill ("Officer Hill") were allegedly present when Bill Doe made these statements on October 22, 2013. (*Id.*)

Based on the information they obtained from Bill Doe, school officials removed the Plaintiffs from class on October 24, 2013. One of the students, Bob Doe, was

2

handcuffed by Officer Hill, who explained that while Bob Doe was not under arrest, he was being handcuffed for his safety, the safety of the officer, and the safety of others in the school. (Hill Dep. 21:10-17, ECF No. 45-8.) School officials also searched backpacks, social media, and classroom materials and found further evidence corroborating the Plaintiffs' association with a group known as "Outlaw." (Hilton Aff. ¶13, ECF No. 44-4.) Plaintiffs have alleged that Outlaw is not actually a gang, but a rap group. (*See, e.g.*, Hilton Aff. Ex. B, ECF No. 44-4 at 52.)

Based on the evidence that they found, school officials suspended the Plaintiffs and recommended that Sam Doe, John Doe, and Bill Doe be expelled from T.L. Hanna. (*See id.* at 17-60.) In the case of Bob Doe, who is eligible for special education and related services because of a learning disability, his IEP team recommended that his placement be changed to home-based, and his mother consented to the change in placement. (IEP Docs., ECF No. 44-13.) Upon receiving information from Principal Hilton that Sam Doe, John Doe, and Bill Doe had been recommended for expulsion for the remainder of the 2013-2014 school year, the school district's hearing officer, Mike Ruthsatz, notified each of the students' parents by letter that due process hearings had been scheduled for November 8, 2013, at the District Office. (Ruthsatz Aff. ¶ 3, ECF No. 44-3.)

Upon the request of Plaintiffs, the hearings were delayed until November 13, 2013, on which date, Mr. Ruthsatz, convened three separate hearings, one for each of the Plaintiffs facing expulsion. (*Id.* ¶ 5-6.) Each Plaintiff was represented by their attorney, Don Smith, who is also representing them in this action. (*Id.* ¶ 6.) Mr. Ruthsatz submitted an affidavit indicating that each hearing lasted approximately forty-five

minutes to an hour, and that the students and their counsel were afforded an opportunity to submit evidence and cross examine the school officials who provided information in support of their expulsion. (*See id.* ¶¶ 9-11.) Following deliberations, Mr. Ruthsatz issued written decisions on November 25, 2013, upholding the recommendation that Sam Doe, John Doe, and Bill Doe be expelled. (Ruthsatz Aff. Ex. D, ECF No. 44-3 at 66-71.)

The Plaintiffs argue that they were denied due process because their counsel, Don Smith, was not permitted to pursue certain lines of cross examination with some of the witnesses who testified in support of the Plaintiffs' expulsions. (Pl. Resp. to Mot. Summ. J., ECF No. 49 at 4.) In support of this claim, Plaintiffs cite the transcript of the hearing of Sam Doe, 16:16-17:1. Here is what is contained in those lines:

> [UNIDENTIFIED SPEAKER]…behavior contract, failure to adhere to Anderson School District Five Student Code of Conduct, his positive identification as a gang member using the Anderson County Sheriff's Department and Anderson Police Department's Gang Identification Checklist and my duty to tell [sic] keep T.L. Hanna High School and its 2000 students, faculty, and staff safe, I am recommending [name blacked out] for expulsion.
> HEARING OFFICER: Anything further?

The Court is at a complete loss as to how the testimony cited illustrates that Mr. Smith was "prohibited from impeaching the Defendants as they testified before the hearing officer."

On December 18, 2013, Plaintiffs' counsel notified the school district that his clients intended to appeal their expulsions to the school district's board of trustees. (*See* ECF No. 44-14 at 2.) On January 27, 2014, the board of trustees considered these appeals; after concluding that there was substantial evidence to uphold the recommended expulsions, the board of trustees denied the appeals in letters dated

January 30, 2014. (*See* ECF No. 44-15 at 2-4.) Pursuant to S.C. Code § 59-63-240, Plaintiffs appealed the decision of the board of trustees to the Court of Common Pleas for Anderson County. In an Order dated October 6, 2014, the Honorable R. Lawton McIntosh upheld the board's decision. (*See* Order, *Doe v. Anderson County District 5*, C.A. No. 2014-CP-04-00381, ECF No. 44-12.) The Court finds the following excerpts from Judge McIntosh's order to be particularly relevant:

> Petitioners claim that the District failed to prove the alleged gang activity for which the expulsions were brought. In addition, Petitioners assert a lack of due process and constitutional violations.
> …
> Section 59-63-240 of the South Carolina Code provides that a school board's decision to expel a student may be appealed to the proper court. Thus, it is this Court's role to review the record to determine whether there is substantial evidence to support the Board's decision and determine whether the expulsion hearing provided sufficient due process, as well as review any relevant statutory or constitutional claims which an aggrieved party may make regarding any aspect of the procedures. After carefully considering the entire record in this matter, including the memoranda of law submitted on behalf of the parties, this Court finds that Petitioners were afforded due process based upon statutory and case law, and that there is substantial evidence in the record to support the Board's action.
> …
> There is ample evidence in the Record to support the Board's decision to uphold the Petitioners' expulsions from school.
> …
> In addition, Petitioners argue that their due process rights at their hearings were violated. However, Courts have repeatedly held that strict rules of evidence do not apply in student discipline matters and, among other things, hearsay evidence is admissible.
> …

(*Id.* at 1-4, 6[1].) Plaintiffs have appealed this Order to the South Carolina Court of Appeals. (*See* Case No. 2014-002377, *available at* http://ctrack.sccourts.org/public/caseView.do?csIID=58049.) Plaintiff filed its complaint

---

[1] In this instance, the pin cites correspond to the original pagination of the order, not the ECF pagination.

in the instant federal action on May 27, 2014, several months before Judge McIntosh ruled on Plaintiffs' appeal. (*See* ECF No. 1.)

## **STANDARD OF REVIEW**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

6

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a summary judgment motion. *Anderson*, 477 U.S. at 252. Conclusory allegations or denials, without more, are likewise insufficient. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

### I.    Claim and Issue Preclusion

Defendants argue that Plaintiffs' claims are barred by both claim and issue preclusion. Even where a party seeks vindication of federal statutory and constitutional rights, "[t]he preclusion rules of the state that entered the judgment control. Only if the state judicial procedure fell below due process requirements can preclusion be denied." *See* 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4471 (2d ed.). Here, the Court does not find that the state's judicial procedure fell below due process requirements so as to nullify issue and claim preclusion.

Issue preclusion, also known as collateral estoppel, "occurs when a party in a second action seeks to preclude a party from relitigating an issue which was decided in a previous action." *S. Carolina Prop. & Cas. Ins. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 403 S.E.2d 625, 627 (S.C. 1991). A "party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was: (1) actually litigated in the prior

7

action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Catawba Indian Nation v. State*, 756 S.E.2d 900, 906 (S.C. 2014). As the Fourth Circuit has observed, "[c]laim preclusion serves a variety of purposes. It protects litigants against repetitive litigation, and it conserves judicial resources." *Serna v. Holder*, 559 F. App'x 234, 237 (4th Cir. 2014). It also "increases confidence in the judicial system by avoiding inconsistent results and ensuring that private disputes have final, settled outcomes." *Id.*

Claim preclusion, which is often referred to as res judicata, "bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Plum Creek Dev. Co., Inc. v. City of Conway*, 512 S.E.2d 106, 109 (S.C. 1999). The doctrine bars not only claims that were actually raised in the prior action, but also claims "which might have been raised in the former suit." *W Hilton Head Ctr. of S. Carolina, Inc. v. Pub. Serv. Commn. of S. Carolina*, 362 S.E.2d 176, 177 (S.C. 1987). Claim preclusion applies "if (1) the identities of the parties are the same as in the prior litigation, (2) the subject matter is the same as in the prior litigation, and (3) there was a prior adjudication of the issue by a court of competent jurisdiction." *Catawba Indian Nation*, 756 S.E.2d at 907. Additionally, claim preclusion applies to "the parties and their privies." *Price v. City of Georgetown*, 375 S.E.2d 335, 338 (S.C. App. 1988) (quotation marks and citation omitted). "In a claim preclusion context, privity 'generally involves a person so identified in interest with another that he represents the same legal right.'" *Jones v. HSBC Bank USA, N.A.*, 444 Fed. App'x 640, 644 (4th Cir. 2011) (unpublished) (quoting *FWB Bank v. Richman,* 731 A.2d 916, 930 (Md. 1999)). Here, the Court

8

concludes that Defendants T.L. Hanna High School and its staff and officers should be considered privies of Anderson County School District 5, the named party in the state court action.

Plaintiffs raise several arguments that claim and issue preclusion do not affect their claims, but their arguments are poorly supported and unpersuasive. First, Plaintiff argues that "[f]ederal courts are not required to accord full faith and credit to constitutionally infirm state court judgments." (Pls.' Resp. in Opp'n to Defs.' MSJ 5, ECF No. 49.) Although not properly cited as such, this statement is actually a direct quote from the Supreme Court's ruling in *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982), but it is taken out of context and does not stand for the proposition for which it is cited. If the quote meant what Plaintiffs suggest, parties wishing to challenge adverse state court rulings on federal constitutional matters could simply file identical actions in federal district court rather than going through the state appellate process and, if necessary, petitioning the United States Supreme Court for certiorari. Clearly this is not the law.

Second, Plaintiffs point out that "[c]ollateral estoppel [issue preclusion] does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." (ECF No. 49 at 5.) Plaintiffs argue that they "did not have a full and fair opportunity to litigate their claims" because their "attorney was prohibited from using a line a [sic] questioning to impeach Defendants." Plaintiffs conflate what they consider a denial of a full and fair opportunity to litigate their case in the expulsion hearings with a full and fair opportunity to challenge the sufficiency of those hearings on due process grounds before the Circuit

9

Court. It is the latter that is relevant and gives rise to claim preclusion here. In other words, even assuming that Plaintiffs were denied due process by their inability to impeach witnesses at the expulsion hearings (a claim that is not supported by the record), Plaintiffs had a full and fair opportunity to make the argument that they had been denied due process in the Court of Common Pleas, and, in fact, *did make this argument*. (*See* Common Pleas Order 6, ECF No. 44-12 ("Petitioners argue that their due process rights at their hearings were violated.").)

The State Court rejected Plaintiffs' arguments, finding (1) there was substantial evidence to justify the Board's decisions to uphold the suspensions, (2) that the Plaintiffs' due process rights were not violated by Defendants because "strict rules of evidence do not apply in student discipline matters," and (3) that Plaintiffs' First Amendment rights were not violated either. (*See id.*) This ruling has preclusive effect. Moreover, Plaintiffs appear to have filed an appeal with the South Carolina Court of Appeals that is still pending. (*See* Case No. 2014-002377, *available at* http://ctrack.sccourts.org/public/caseView.do?csIID=58049.) Plaintiff has not argued to this Court that S.C. Code § 59-63-240 or the process it establishes for appealing an expulsion decision is unconstitutional; rather it appears that Plaintiff is essentially trying to have this Court overrule the state court, which it cannot and will not do.

Federal courts in similar cases have found that a state court's ruling, or even a state administrative determination, should be given preclusive effect. *See, e.g., Plough By and Through Plough v. W. Des Moines Community Sch. Dist.*, 70 F.3d 512, 514-17 (8th Cir. 1995) (finding that the plaintiff was barred by issue preclusion and claim preclusion from relitigating a due process claim in federal district court after the Iowa

State Board of Education rejected his argument that consideration of improper evidence at a school board expulsion hearing violated his due process rights); *Peterson v. Indep. Sch. Dist. No. 811*, 999 F. Supp. 665, 671-72 (D. Minn. 1998) (claim preclusion and issue preclusion barred student from relitigating due process claims arising from his expulsion when such claims had been rejected by the Department of Education acting in a judicial capacity). Additionally, a plaintiff's attempt to recast precluded claims should be rejected. *See id.* at 672 (holding that the plaintiff "may not simply 'repackage' his due process and Dismissal Act claims and present them to this court pursuant to 42 U.S.C. § 1983 when such claims have already been decided"). Here, the Court concludes that Plaintiffs' due process claims against all of the Defendants are foreclosed by issue preclusion and that all of Plaintiffs' constitutional claims against Anderson School District 5 and its privies are barred by claim preclusion because they could have been raised in the action in Circuit Court. (*See* Order 2, *Doe v. Anderson County District 5*, C.A. No. 2014-CP-04-00381, ECF No. 44-12 (indicating that in addition to evaluating "whether the expulsion hearing provided sufficient due process," the court would consider "any relevant statutory or constitutional claims which an aggrieved party may make regarding any aspect of the procedures").)

Alternatively, if this Court were to consider the merits of the Plaintiffs' claims, it would find for Defendants for substantially the same reasons set forth in Judge McIntosh's order. The Court agrees with Judge McIntosh and Defendants that Plaintiffs were afforded due process, and the record more than adequately supports the decisions of school officials and the board of trustees. *See Reese v. Richland Sch. Dist. Two*, CV 3:13-03040-MGL, 2015 WL 9239785, at *5 (D.S.C. Dec. 17, 2015) (finding that

Defendants "complied with the statutory and constitutional requirements for procedural and substantive due process" in a similar case).

## II. Qualified Immunity

Even if the Court were not inclined to find that the Plaintiffs' constitutional claims against the individual Defendants were barred by issue and claim preclusion, it would still grant summary judgment on those claims because the individual Defendants are entitled to qualified immunity. "The doctrine of qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Danser v. Stansberry,* 772 F.3d 340, 345 (4th Cir. 2014). "The doctrine protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Gilchrist,* 749 F.3d 302, 307 (4th Cir. 2014) (quoting *Stanton v. Sims,* 134 S.Ct. 3, 4 (2013)). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan,* 555 U.S. 223, 231–32 (2009). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). "An official asserting the defense of

qualified immunity bears the burden of proof with respect to that defense." *Danser,* 772 F.3d at 345.

Here, the Court easily concludes that the facts, even when construed in the light most favorable to Plaintiffs, do not present the elements necessary to state a violation of a constitutional right. As previously noted, the Court agrees with Judge McIntosh that Defendants did not violate Plaintiffs' due process and First Amendment rights. At best, Plaintiffs seek to hold Defendants accountable for bad guesses in grey areas, and the Court concludes that the individual Defendants are protected by sovereign immunity. The Court also specifically finds that Officer Hill is entitled to qualified immunity on the federal claims Plaintiffs assert against him. As far as the Court can tell, the only meaningful allegations against Officer Hill beyond those generally advanced against other school officials, involve his role in removing the Plaintiffs from their classrooms and his decision to handcuff Defendant Bob Doe. These allegations simply do not state a constitutional violation given the facts in the record. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (noting that the Supreme Court recognized that handcuffing was an appropriate response to officer-safety concerns even during investigative detentions"); *Hill v. Sharber*, 544 F. Supp. 2d 670, 681 (M.D. Tenn. 2008) (finding no constitutional violation where a high school student was handcuffed for a limited period of time "and was informed at the time that he was being handcuffed solely to protect his safety and that of the deputies").

Plaintiffs' analysis in response to the argument that the School District Defendants are entitled to qualified immunity is contained in the following paragraph:

> Clearly, the right to due process at an expulsion hearing is one to which Defendants knew or should have known Plaintiffs were entitled. In

13

> addition, Defendants based their belief that Plaintiffs were involved in gang activity on the Plaintiffs wearing white tee-shirts, made rap music [sic], wrote the word "outlaw" in their notebooks, and other harmless acts. Plaintiffs believe that the evidence of their gang affiliations, or lack there of [sic], points to a racial bias in the decision to recommend them from [sic] expulsion. If true, Defendants could not have reasonably believe [sic] that Plaintiffs' expulsions could be recommended based on race.

(ECF No. 49 at 6.) The Court struggles to follow Plaintiffs' argument, but will summarize what it understands: Plaintiffs believe that their expulsions were motivated by race, and if the Court accepts this belief as evidence, then Defendants are not entitled to qualified immunity because they knew or should have known that an expulsion decision cannot be based on race. If this is in fact what Plaintiffs are arguing, it is not a very good argument. There are no allegations in the complaint that race played a role in Plaintiffs' expulsion and there is no evidence in the record indicating that race was a factor. The Court rejects Plaintiffs' arguments and finds that all of the individual Defendants are entitled to qualified immunity.

### III.     The Court Declines to Exercise Supplemental Jurisdiction over the Remaining State Law Claims

The remaining state law claims are so cursory and threadbare that the Court doubts that most or any of them would survive summary judgment. However, the Court need not reach these claims because it has dismissed all claims over which it had original jurisdiction and declines to exercise supplemental jurisdiction over the remaining state court claims.

"The doctrine of supplemental jurisdiction allows district courts 'authority to decline to exercise supplemental jurisdiction in limited circumstances, including ... where the court dismisses the claims over which it has original jurisdiction.'" *Bishop v. County of Macon*, 620 Fed. App'x 148, 150 (4th Cir. 2015)(unpublished) (quoting *ESAB*

*Group, Inc. v. Zurich Ins. PLC,* 685 F.3d 376, 394 (4th Cir. 2012)); *see also Sikhs for J. "SFJ", Inc. v. Facebook, Inc.*, 15-CV-02442-LHK, 2015 WL 7075696, at *7 (N.D. Cal. Nov. 13, 2015) ("Where a district court has dismissed all claims over which it has original jurisdiction, it may sua sponte decline to exercise supplemental jurisdiction over remaining state law claims under 28 U.S.C. § 1367(c)." (citation and quotation marks omitted)). A district court maintains "wide discretion" to dismiss claims over which it has supplemental jurisdiction. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n.4 (4th Cir. 2006) (citation omitted). "In deciding whether to exercise supplemental jurisdiction, a court should consider 'the values of judicial economy, convenience, fairness, and comity.'" *Bishop*, 620 Fed. App'x at 50 (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)).

Here, the Court finds that the values of judicial economy, convenience, fairness, and comity all favor the resolution of this matter in state court. If the Court could summarize its opinion in this case in a single sentence, it would be that this case never should have been in federal court in the first place. The Court also notes that Judge Lewis declined to exercise supplemental jurisdiction in a similar case after granting the defendants summary judgment on due process claims. *See Reese v. Richland Sch. Dist. Two*, CV 3:13-03040-MGL, 2015 WL 9239785, at *5 (D.S.C. Dec. 17, 2015).

"A case originally filed in federal court cannot be remanded to state court," but this does not prohibit the Court from declining supplemental jurisdiction and dismissing the state court causes of action without prejudice, which is what the Court elects to do here. *Payne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 75 Fed. App'x 903, 906 (4th Cir. 2003)(unpublished). In the event a court declines to exercise supplemental

15

jurisdiction, the "period of limitations" for remaining claims "shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." *Reese*, 2015 WL 9239785, at *5 (citing 28 U.S.C. § 1367(d)). Plaintiffs should be aware of the limitations period, and act accordingly if they wish to continue to pursue their claims in state court.

## CONCLUSION

The Defendants' motions for summary judgment (ECF Nos. 44 & 45) are GRANTED with regard to Plaintiffs' federal claims, including all claims under 42 U.S.C. § 1983, claims for violation of due process rights guaranteed by the United States Constitution, and claims for violation of First Amendment rights.[2] The Court declines to exercise supplemental jurisdiction over the state claims, and they are dismissed without prejudice.

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

March 31, 2016
Greenville, South Carolina

---

[2] The Court would like to be more specific about which causes of action it is granting summary judgment on, but Plaintiffs failed to label their causes of action and simply invoked 42 U.S.C. § 1983, the First Amendment, and due process in their general allegations and prayer for relief.